J-S67030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EUGENE D. FARLEY | : | |
| | : | |
| Appellant | : | No. 1121 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 15, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004633-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED JANUARY 14, 2020**

Appellant, Eugene D. Farley,[1] appeals from the May 15, 2019 Judgment of Sentence following his jury conviction of Possession of a Controlled Substance (cocaine).[2]   On appeal, Appellant challenges the denial of his suppression motion, an evidentiary ruling, and the weight given to the Commonwealth's evidence.   After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although not designated in the caption of the Notice of Appeal, Appellant's formal name is Eugene D. Farley, III, while his father is Eugene D. Farley, Jr.

[2] 35 P.S. § 780-113(a)(16).

The facts and procedural history are as follows. Appellant was serving a sentence of special probation imposed for an earlier conviction[3] when, on October 3, 2018, his supervising parole agent Chris Hall and Reading Police Officer Vincent Leazier, performed an unannounced visit at Appellant's residence because Appellant had failed recent drug tests in violation of the terms of his probation and parole. Agent Hall had visited Appellant's residence, which he believed Appellant shared only with his grandmother and his sister, approximately ten times before this visit.

On the day of this visit, Agent Hall and Officer Leazier waited for approximately five minutes before Appellant appeared at the door. Appellant, who spoke quickly and whose hands were shaking, seemed extremely nervous to Agent Hall and Officer Leazier.[4] Officer Hall spoke with Appellant about Appellant's drug treatment plan and about the fact that Appellant had recently tested positive for marijuana use. Appellant admitted to Agent Hall that he had smoked marijuana and stated that, if given, he would fail another urine test.

---

[3] Appellant had pleaded guilty to one count of Possession with Intent to Deliver at Docket Number 4464-2012 in exchange for a term of two years' probation to be served upon his release from prison in another case. His special probation term began on February 22, 2018, the date he was paroled on the other case.

[4] According to Officer Leazier and Agent Hall, this was not Appellant's usual demeanor.

Agent Hall then conducted a parole search for drugs in the second floor bedroom, in which Agent Hall had previously seen Appellant sleeping, and which Appellant had identified as his.[5] In the bedroom, Agent Hall discovered a bag containing five smaller bags with a substance later identified as crack cocaine in the right front pocket of a pair of jeans lying on the floor. Appellant's photo identification was in the left front pocket of the jeans. Agent Hall confronted Appellant, who admitted that the drugs were his for his personal use.

The Commonwealth charged Appellant with one count of Possession of a Controlled Substance (cocaine). On December 14, 2018, Appellant filed an Omnibus Pretrial Motion in which he alleged that Agent Hall lacked reasonable suspicion to search Appellant's residence. Omnibus Pretrial Motion, 12/14/18, at ¶ 7. He argued that, other than Appellant's failed marijuana test, his admission that he had smoked marijuana, and his statement that he would fail another urine test, there was no indication that Appellant was engaged in criminal activity. *Id.* at ¶ 8. He concluded, therefore, that the court should suppress anything seized as a result of the allegedly improper search. *Id.* at 9.

The suppression court held a hearing on the Motion, after which it concluded that Agent Hall had reasonable suspicion to conduct a search of

---

[5] Agent Hall had seen Appellant sleeping in the second-floor bedroom on Agent Hall's previous parole check, about a month earlier, and on other prior occasions. Appellant had also previously stayed in a bedroom on the third floor.

Appellant's premises. Thus, on March 6, 2019, the suppression court denied Appellant's Motion.

Appellant proceeded to a jury trial. Prior to the commencement of trial, Appellant filed a Motion *in Limine*, to preclude the Commonwealth from admitting evidence of Appellant's prior drug use and past criminal behavior. The trial court denied Appellant's Motion.

At trial, the Commonwealth presented the testimony of Agent Hall. Appellant's father, Eugene Farley, Jr., testified on Appellant's behalf in support of Appellant's defense that the second-floor bedroom from which Agent Hall seized cocaine was, in fact, Appellant's father's bedroom, and the jeans in which Agent Hall found the cocaine and the identification belonged to Appellant's father. In particular, Appellant's father testified that Appellant's bedroom was the third-floor rear bedroom. N.T., 4/23/19, at 77. Appellant's father also testified that he himself had been using cocaine in October of 2018. *Id.* at 79. He testified that the second-floor bedroom was his, but he was not sure whether the cocaine Agent Hall found belonged to him. *Id.* at 80. He also testified that he was not sure whether, on the day in question, he had his identification on his person or whether he had left it in his room. *Id.* at 81

Relevantly, Agent Hall testified that he had never seen Appellant's father in Appellant's residence. *Id.* at 54. He further testified that he recognized Appellant's photograph on the identification he found in the pocket of the jeans in the second-floor bedroom. *Id.* at 54-55. He conceded that he did not note the date of birth on the identification or take a photograph of it. *Id.* at 60.

- 4 -

Agent Hall also testified that Appellant admitted that the crack cocaine Agent Hall found was Appellant's for his personal use. *Id.* at 55-56, 62, 66. Agent Hall testified that, although Appellant was not using any kind of electronic monitor device on October 3, 2018, Agent Hall had previously seen the charging cable for Appellant's electronic monitor GPS in the second-floor bedroom. *Id.* at 65, 67. This was further indicia to Agent Hall that the second-floor bedroom was Appellant's bedroom. *Id.* at 65

On April 23, 2019, the jury convicted Appellant of the above charge. On May 15, 2019, the trial court sentenced Appellant to a term of eight to twenty-four months' incarceration. On May 24, 2019, Appellant filed a Post-Sentence Motion in which he challenged the sufficiency and weight of the evidence and the discretionary aspects of his sentence. The trial court denied Appellant's Motion after a hearing.

This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal, which we have reordered for ease of disposition:

1. Whether the [t]rial [c]ourt erred in denying Appellant's Omnibus Pre-trial Motion to suppress where: the Commonwealth failed to establish reasonable suspicion of a probation violation where [Appellant's] bedroom was on the third floor of the house and that the search of the second[-]floor bedroom was beyond the scope of an allowable search and that reasonable suspicion of a probation violation existed to conduct a search of [] Appellant's property which was not conducted at or near the time of any drug testing[?]

2. Whether the [t]rial [c]ourt erred by not granting [Appellant's] Motion *in Limine* to preclude [mention] of prior drug use and past criminal behavior as irrelevant, where the Commonwealth repeatedly noted [Appellant's] past drug use which proved unfairly prejudicial and outweighed any probative value and where the Commonwealth's mention of past criminal behavior or bad acts also served to confuse the jury and proved unfairly prejudicial[?]

3. Whether the [t]rial [c]ourt abused its discretion when it permitted a guilty verdict that was against the weight of the evidence, where: the testimony of the Commonwealth's sole witness was contrary to prior statements made during a pre-trial hearing, the testimony was contrary to statements made by defense witness Eugene Farley, Jr., the testimony of the Commonwealth's witness included statements about prior bad acts which confused the jury, the Commonwealth failed to establish that the bedroom was used by [] Appellant at the time of the search, the testimony of the Commonwealth's witness failed to secure an identification [card] located in the pants pocket along with the drugs and/or document such findings, and the testimony of the Commonwealth's witness could not establish a date of birth on the identification card located within the pants pockets[?]

4. Whether the Commonwealth failed to present sufficient evidence to support a verdict of guilty where the Commonwealth failed to prove the required elements of the offense beyond a reasonable doubt; specifically, the Commonwealth failed to prove that Appellant had actual or constructive possession of the controlled substance[?][6]

Appellant's Brief at 6-8 (original footnote omitted).

In his first issue, Appellant claims that the trial court erred in denying his Motion to Suppress evidence because Agent Hall lacked reasonable suspicion to conduct the search of his bedroom. Appellant's Brief at 16-19. In particular, Appellant argues that the Commonwealth failed to establish that

---

[6] Appellant acknowledged in his Brief that this issue lacks merit and, therefore, indicated that he was abandoning it.

Agent Hall had reasonable suspicion to believe that Appellant's property would contain contraband or other evidence of probation violations or that Appellant resided in the second-floor bedroom. *Id.* at 18-19.

When this Court reviews a challenge to the denial of a suppression motion, we are limited to determining "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019). Moreover,

> [b]ecause the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Id.* (internal quotations and citations omitted).

"A parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy." *Commonwealth v. Williams*, 692 A.2d 1031, 1035 (Pa. 1997). In Pennsylvania, a supervising parole/probation agent may search a residence if there is "reasonable suspicion to believe that the real or other property in the possession or under

the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2).

Section 6153, pertaining to the supervisory relationship of probation and parole officers, provides the following guidance with respect to determining the existence of reasonable suspicion:

> (6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
>
>> (i) The observations of agents.
>>
>> (ii) Information provided by others.
>>
>> (iii) The activities of the offender.
>>
>> (iv) Information provided by the offender.
>>
>> (v) The experience of agents with the offender.
>>
>> (vi) The experience of agents in similar circumstances.
>>
>> (vii) The prior criminal and supervisory history of the offender.
>>
>> (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S § 6153(d)(6).

The "reasonable suspicion" assessment requires an evaluation of the totality of the circumstances, and can arise from information which is less reliable than that which is required to establish probable cause. *Commonwealth v. Moore*, 805 A.2d 616, 620 (Pa. Super. 2002) (citation omitted).

The trial court summarized Agent Hall's testimony at the suppression

hearing as follows:

> In this case, [Agent Hall] had arrived at [Appellant's] house in order to determine whether a technical violation had taken place. Although he arrived with a police officer, this was customary for his visits. He came to the residence because Appellant had failed several urine tests. [Agent Hall] testified that [Appellant] seemed nervous even though he had not been nervous on similar probation home visits, including when police officers [had previously] accompanied [Agent Hall]. [Appellant] took at least 5 minutes to get to the door, but only had pants on when he arrived. When asked, [Appellant] offered the information himself that he would fail another drug test. Based on the factors laid out in [61 Pa.C.S. §6153, Agent Hall] had reasonable suspicion to search [Appellant's residence]. [Agent Hall] was not acting for the purposes of a criminal investigation. He had reasonable suspicion that [Appellant] had violated his [probation] and he was searching in order to determine whether a technical violation had taken place.

Suppression Court Findings of Fact and Conclusions of Law, 3/6/19, at 4

(citation to the Notes of Testimony omitted).

Our review of the Notes of Testimony from the suppression hearing

indicates that the record supports the suppression court's factual findings as

set forth above. Moreover, in light of these facts, the suppression court did

not err when it concluded that Agent Hall had reasonable suspicion to search

Appellant's property. Appellant is, therefore, not entitled to relief on this

claim.

In his second issue, Appellant claims the trial court erred when it denied

Appellant's Motion *in Limine* to preclude mention of Appellant's prior urine test

failures. Appellant's Brief at 20-21. Appellant's argument is, however,

underdeveloped, as he has failed to cite to any controlling case law in support of his claim.[7] Moreover, Appellant has not specified whether he believes the trial court should have excluded the evidence as irrelevant, or on some other grounds. Appellant's failure to develop this issue has hampered this Court's ability to conduct meaningful appellate review. We, thus, conclude that Appellant has waived this claim. **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted) (where "defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); **see also** Pa.R.A.P. 2101 (providing that where the defects in an appellant's brief are substantial, this Court may quash or dismiss the appeal).

In his final issue, Appellant challenges the weight the jury gave to the Commonwealth's evidence. Appellant supports his claim by highlighting alleged discrepancies between Agent Hall's preliminary hearing and trial testimony and Appellant's father's testimony testimony that Appellant did not reside in the second-floor bedroom, but rather in the third-floor bedroom. Appellant's Brief at 23-24. Appellant also complains that the jury gave too much weight to Agent Hall's testimony that the photograph on the identification he found in the second-floor bedroom was of Appellant when the Commonwealth did not introduce any evidence to "differentiate between" Appellant and his father. **Id.** at 24.

_____

[7] Appellant has cited only to boilerplate case law setting forth the standard of review of an evidentiary claim.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert***, ***supra*** at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.*** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." ***Id.*** at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.*** (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain

that the verdict shocks the conscience of the court." ***Id.*** (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner and it may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

The trial court explained its decision to deny Appellant's weight claim as follows:

> Vigorous cross examination occurred regarding the living arrangements of [Appellant] within the home, the written report of [Agent Hall] as well as the preservation of physical evidence[,] such as a copy of the [identification] found[,] including the presentation of contradictory witness testimony from Eugene Farley, Jr.

Trial Ct. Op., 8/27/19, at 7 (unpaginated).

Appellant essentially asks us to reassess the jury's determination of the credibility of Agent Hall and Appellant's father, and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of

the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim. Appellant is, therefore, not entitled to relief on this claim.

Judgment of Sentence affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge Olson concurs in result.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2020